## Case No. 11,051.

PETTY et al. v. MERRILL et al.

[12 Blatchf. 11.] [1]

Circuit Court, E. D. New York.    April 25, 1874.

ADMIRALTY—REHEARING.

A collision occurred between two vessels, the M. and the E. The libellants, as owners of the M., brought this suit, in personam, in the district court for this district, against the owners of the E., to recover for damages caused by such collision, claiming $2,100. The owners of the E. sued the M., in rem, in the district court for the Southern district of New York, claiming to recover $3,489.37, as damages caused by the collision. Both suits were tried together, on the same proofs, before the same judge, in the district court. In this suit, the libellants had a decree for $1,695.92. The libel in the other suit was dismissed. The owners of the E. appealed to circuit court, in each suit. The decree in the suit in the Southern district was directed to be affirmed in November, 1870, and the formal decree of affirmance was entered in February, 1871. In the latter month the owners of the E. appealed from that decree to the supreme court. In November, 1871, the appeal in this suit was heard by the circuit court, and, on the 8th of March, 1872, the libellants had a decree therein, in this court, for $1,292.81. In the latter month, the owners of the E. appealed from that decree to the supreme court. That court dismissed the appeal for want of jurisdiction. Afterwards, that court, on the merits, reversed the decree of the circuit court for the Southern district dismissing the libel in the suit in that district. The respondents in this suit, in June, 1873, moved this court for a rehearing of this suit: Held, that the motion must be denied.

In admiralty.

Charles Donohue and Franklin A. Wilcox, for libellants.

Richard H. Huntley, for respondents.

WOODRUFF, Circuit Judge. On the 20th of September, 1868, a collision occurred in the East river, between Blackwell's Island and Long Island, between the schooner Mary Eveline, belonging to the libellants, and the sloop Ethan Allen, belonging to the respondents. The schooner was damaged, and the sloop was sunk, and so injured as to be unfit to repair. [Henry B.] Merrill and others, owners of the Ethan Allen, filed their libel, in rem, against the Mary Eveline, to recover, for their loss, $3,489.37, in the district court for the Southern district of New York, and [John W.] Petty and others intervened as owners of the latter, to defend, &c. Petty and others, as such owners, filed their libel in the district court for the Eastern district of New York, in personam, against Merrill and others, as owners of the Ethan Allen, to recover for their loss by injury to the Mary Eveline, to the amount of $2,100. By arrangement between the proctors for the respective parties, the two causes were tried before the district judge of the Eastern district of New York, (he being authorized to act in the Southern district.) The same proofs were taken and used in each case. In the

district court, the causes were argued together. The district judge was of opinion, that the proofs showed that the Ethan Allen was wholly and solely in fault, and that her fault caused the collision and the resulting damage. The Mary Eveline [Case No. 9,211]. Decrees were accordingly entered in the respective district courts. The libel filed in the Southern district by the owners of the Ethan Allen, Merrill and others, was dismissed; and, in the Eastern district, the owners of the Mary Eveline were adjudged entitled to recover the damages sustained by the injury to that vessel, which, with interest and costs, were fixed, by the decree of that court, at $1,695.92. Appeals in each case were taken to the circuit court for the respective districts. The appeal in the Southern district was brought to a hearing on the 20th of November, 1870, and the decree dismissing the libel filed by the owners of the Ethan Allen was, on that day, decided, and directed to be affirmed, though the formal decree to that effect, appears not to have been entered until February 1st, 1871. From that decree the owners of the Ethan Allen, the present petitioners, on the 11th of February, 1871, appealed to the supreme court of the United States. Pending that appeal, and nearly one year after the decision of that case in the circuit court for the Southern district, by which decision the opinion of the circuit court respecting the merits of both cases, upon the proofs, was made known to both parties and their counsel, and on the 2d of November, 1871, the appeal in the present case was brought to a hearing in the Eastern district. No application, founded on the pendency of the appeal, and the possibility of a reversal in the supreme court, with the suggestion that, in this case, no appeal to the supreme court could be entertained, was made herein, to postpone the hearing or decree herein, until the decision of the supreme court could be had. It followed, that this cause was heard, and, on the 8th of March, 1872, the decree of the district court was modified by the deduction of one item of damage claimed, but held not recoverable (Petty v. Merrill [Id. 11,050]), and a final decree in favor of the owners of the Mary Eveline was entered, for $1,292.81, including costs. The owners of the Ethan Allen, the present petitioners, on the 18th of March, 1872, appealed, also, from the decree of the circuit court in this cause, to the supreme court of the United States. But, on a motion to dismiss such appeal, made at the December term following, the supreme court held (Merrill v. Petty, 16 Wall. [83 U. S.] 338) that it had no jurisdiction of the cause, the amount decreed herein being less than $2,000, and the appeal was dismissed. But, thereafter, in due course, the appeal of the owners of the Ethan Allen, from the decree made in the Southern district, dismissing their libel, was heard and decided. The supreme court therein declared their opinion (The Mary Eveline, Id. 348) that, upon the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

proofs therein, the collision between the two vessels was caused solely by the fault of the schooner Mary Eveline, and that she was solely responsible for the damages resulting from such collision. The decree of the court below in her favor was, therefore, reversed. Although no such fact is stated in the papers upon which this motion is founded, I am, probably, at liberty to state, that, (as appears by the files and entries of the court) the said owners of the Ethan Allen, Merrill and others, the petitioners here, after their appeal in this cause, applied for and obtained a stay of execution, until such appeals should be decided. Such stay was made in anticipation of the possibility of some such application as is now made, though without concluding either party thereby. After the announcement of the decision of the supreme court reversing the decree in the other case, in May, 1873, the owners of the Ethan Allen, on the 10th of June, 1873, gave their notice of the present motion. They ask a rehearing of the cause wherein the owners of the Mary Eveline had a decree in personam to recover damages caused by the said collision; for which damages the supreme court have adjudged that, upon the proofs before them, the owners of the Ethan Allen were not liable. The libellants oppose the motion, insisting that this court, according to the rules and practice of the court, has no power, after the lapse of several terms since the decree was entered, to grant this motion and proceed again to try the cause.

It is material to observe, that, if the motion could be granted, it would be of discretion, and as an indulgence to the respondents, and it would not be proper to order a rehearing and confine such hearing to the record upon which the cause was heard on the former trial. I should think it just, on setting aside the decree already made, to permit the parties to give further proofs, if they desired to do so. The order would be in the nature of an order for a new trial, to be had in view of the decision of the supreme court, which would be a guide to the principles by which it should be governed, and which did not govern the former trial. It would be just to assume that, on the former trials, the libellants, as well as the court, were misled by erroneous ideas touching the propriety of the navigation by the two vessels in question. The order, if made, should permit the libellants to open the case for a new trial. It cannot, therefore, be certainly known that, upon proofs which may then be given, the decision of the supreme court in the other case will be conclusive. On the contrary, it may then appear that, the whole truth being now developed, the present libellants are clearly entitled to recover, and that, under the decision of the supreme court, the recovery of the owners of the Ethan Allen in the other case works gross injustice. I might, nevertheless, if I thought the granting or denial of this motion rested in mere inclination, uncontrolled by settled rules, be strongly disposed to give to the parties the benefit of the decision of the supreme court in the other case, by directing a new trial in this. As the circumstances now appear, the libellants have a decree against the respondents, to recover damages which the supreme court have, in another case, held the respondents were not liable to pay. The decree has not yet been executed. The tribunal which is the supreme and final judge in such matters has, in effect, determined that the decree is not according to the law, upon the proofs now before the court, and it is, therefore, not just that it should be executed. But I am not in the exercise of arbitrary power; nor is it an unimportant consideration, that litigation ought to end according to some general rules which may guide the conduct of parties. To depart from them, according to the ideas of the judge, of what is abstractly just in each particular case, would be dangerous and productive of evils which can hardly be estimated. I have already suggested that, to grant the motion, would be to order a new trial, the result of which cannot now be certainly known.

A further hypothetical suggestion will show how the granting of the motion might carry the argument, that exact justice between the parties has not been done, to the extreme of making litigation nearly or quite endless. Suppose a new trial should be ordered, and, on that trial, the libellants were not only able to establish a right to recover, by proof of facts and circumstances withdrawing this case from the decision of the supreme court, but should also show that they were, by the former decree, allowed damages grossly inadequate to their indemnity, and a recovery should thereupon be had of more than $2,000. Suppose that, on an appeal then taken, the supreme court should be satisfied that, on the further case made, the libellants were entitled to recover, and should affirm the decree. It would then appear that the owners of the Ethan Allen ought not to recover from the Mary Eveline. Exact justice would seem to forbid it. Ought the supreme court to thereupon recall their mandate directing a recovery by the Ethan Allen? And ought then a new trial to be had in that case? And, if it was had, and the aspect of the case should then be changed by other proofs, and a recovery be thereupon again ordered, ought there then again to be a return to this case, and the proceedings therein be again overhauled, on the ground that abstract justice requires it? Where would be the end of litigation?

The precise question, under the identical circumstances now before me, does not appear to have been decided in any case to which my attention has been called. There are rules of practice, however, to which parties are bound to conform, and which constitute the guide of the courts themselves.

It is of much importance, to the administration of justice, and to the policy which demands that litigation be not indefinitely protracted, that such rules, when made or settled, should be adhered to. The observations of Chief Justice Taney, upon the facility with which a rehearing could be obtained in the English court of chancery, and its consequences, and the refusal of the supreme court to permit such a practice in that court, bear forcibly upon this subject. Brown v. Aspden, 14 How. [55 U. S.] 25.

The case of Rich v. Lambert, 12 How. [53 U. S.] 347, was, probably, in its form, a more obvious case for the granting of a rehearing, if the power existed, than the present. There, several causes of action had been consolidated, and the district and circuit courts had, upon the same proofs and grounds of decison, decreed for the libellants, awarding each a specific amount. The respondents appealed to the supreme court. That court dismissed the appeal as to all the libellants but two, (as the appeal was here dismissed,) for want of jurisdiction, and the decree as to the others was reversed. We know nothing of the subsequent history of the case in the circuit court of South Carolina, but it is obvious that the enforcement of the decrees which were not reversed was liable to all the suggestions of injustice urged here.

In The New England [Case No. 10,151], Mr. Justice Story discusses the question of rehearing in admiralty, and, while he says, "that it is competent for a court of admiralty to rehear a cause after a decree has been pronounced, pending the term, and before the proceedings have been finally enrolled, or drawn up and entered on the record, I confess I do not entertain the slightest doubt," he also says: "I am not aware that, after a decree has been enrolled or entered on record, and the term has passed, any court of admiralty, at least in this country, has ever entertained an application for a rehearing;" and, adverting to the practice in the supreme court, he adds further: "In the case of Hudson v. Guestier, 7 Cranch [11 U. S.] 1, the supreme court held, that a case could not be reheard after the term in which it had been originally decided; and this rule has ever since been constantly adhered to"

No authority or precedent has been found to sanction the order now applied for. It does unfortunately happen that the inferior courts are sometimes found by the court of last resort to have made erroneous decisions. That court has sometimes felt constrained to pronounce prior decisions, made in exercise of its own high jurisdiction, erroneous. And yet neither that tribunal nor the other courts can, where the last expression of the highest wisdom is promulgated, be called upon to look backward indefinitely over its records and conform prior judgments and decrees to such latest utterance.

Some time must be limited, or some state of the record must constitute the test of the right and power to recall and review the previous action of the courts, and the rules governing the subject should, so far as possible, be general, else no one can know when or where is the end of litigation. There are many limitations of the power of courts, which do not rest in questions of exact justice. The case now before us furnishes an illustration of one kind. No suggestion that the decree herein was wrong, and that the supreme court knew, and were about to decide, (as in effect was decided,) that it was wrong, could warrant that court in reversing it.

On examination of the rules prescribed by the supreme court for the courts of admiralty, no intimation is found which will sanction a rehearing of a decree made several terms before the application therefor, upon an appearance by all the parties, or which, in such case, would seem to recognize a power to do so, beyond the general power of courts over their own decrees during the term at which they are pronounced, and at any time before they are enrolled or finally entered. What those rules do declare seems rather to indicate the contrary. By rule 40, "the court may, in its discretion, upon the motion of the defendant, and the payment of costs, rescind the decree in any suit in which, on account of his contumacy and default, the matter of the libel has been decreed against him, and grant a rehearing thereof, at any time within ten days after the decree has been entered, the defendant submitting to such further orders and terms in the premises as the court may direct." Under the acts of congress, the supreme court had authority to make this rule, and confer the power which it declares. They have not thought proper to extend the power to other cases in which it has not heretofore been deemed to exist, according to the views of Judge Story, already referred to.

Conformably to the generally recognized power of courts over their own judgments and decrees, while in paper or during the same term, the 155th rule of the district court for the Southern district of New York provides for a rehearing, or, more literally, it limits, in precise terms, the time within which a rehearing may be granted. That rule is as follows: "A rehearing will not be granted in any matter in which a decree has been rendered, unless application is made at the term when the decree is pronounced, or there is a stay of proceedings by order of the judge." That rule contemplates, I think, a stay in the enrollment or final entry of the decree on the record, although pronounced in form by the court, and not a stay to enable the respondent to try the experiment of an appeal to the supreme court, while that court has no jurisdiction to review the decree. Although the decree has been pronounced, yet, while it has not been properly drawn up, settled, and entered, this rule seems to allow

an application for a rehearing, if a stay of such entry is procured, though the term at which a decision was announced has passed. If that rule may be permitted to influence a decision in this district, as presumptively an expression of a general and recognized rule of admiralty practice, then it is significant to notice, that the decision in the other case was made in the Southern district, dismissing the libel of Merrill and others, and the opinion of the circuit court on the merits involved in both cases was announced nearly one year before the hearing and final decree in this case. There was, therefore, abundance of time to apply for a suspension of the hearing or of the entry of the final decree, pending the appeal to the supreme court in the other case, if the considerations now urged were deemed sufficient.

It is possible for this court to assume to disregard the rules which courts have heretofore recognized on this subject, but it is not proper. It may be possible to say that justice will be thereby effected, and, therefore, this court will make a precedent, although, in all past adjudication, none can be found; but this would be unseemly and dangerous. The power of the court is not despotic in its nature. It consists in conforming to the law as it is, and giving it effect, and not in making law, or declaring what ought, in the circumstances of each particular case, to be the law.

These considerations constrain me, against what would otherwise be my desire, to deny the motion.